UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRACY L. THORNTON,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

No. 2:15-CV-0043-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 19).

**JURISDICTION**

Tracy L. Thornton, Plaintiff, applied for Title II Disability Insurance benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on September 27, 2011. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on May 30, 2013 before Administrative Law Judge (ALJ) Donna Walker. Plaintiff testified at the hearing, as did Medical Experts, John Morse, M.D., and Joseph Cools, Ph.D., and Vocational Expert (VE) Thomas A. Polsin. On June 19, 2013, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 1**

U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 41 years old. She has past relevant work experience as a school bus driver, caregiver/home attendant, and janitor. At the hearing, Plaintiff amended her alleged disability onset date to October 2, 2010, on which date she was 39 years old. Her date last insured for Title II benefits is September 30, 2014.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

*Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) evaluating the medical opinions of record; and 2) discounting Plaintiff's credibility.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 3**

C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

   The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: degenerative disc disease with disc protrusion and nerve root contact, but no neurological findings; left ear residual hearing loss; and a depressive disorder; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the caveat that she may have "only occasional contact and limited cooperation/coordination with co-workers and supervisors, "only brief, superficial and infrequent public contact," and "is also limited to simple routine repetitive tasks with non-strict production standards;" 4) Plaintiff's RFC does not allow her to perform her past relevant work, but (5) it does allow her to perform other jobs existing in significant numbers in the national economy as identified by the VE, including small parts assembler, cafeteria attendant and housekeeper/cleaner. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**OPINIONS OF TREATING AND EXAMINING PHYSICIANS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory,

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 5**

and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The record indicates Plaintiff first saw Phillip Moore Dooley, M.D., in April 2012. At that time, Dr. Dooley reported that Plaintiff "suffers from chronic thoracic mid to lower and into lumbar spine." He also noted that Plaintiff had "failed PT," presumably physical therapy, and had an MRI showing "DDD and DJD" of thoracic spine, referring to degenerative disc disease and degenerative joint disease. Dr. Dooley's note indicates Plaintiff's MRI dated from January 5, 2012. It also indicates her previous primary care physician (PCP) had prescribed hydrocodone for the Plaintiff "for the past 1.5 yrs and escalating amounts[,] but never on a COT [Chronic Opioid Therapy]." (AR at p. 1059). Dr, Dooley wrote:

> Based on MRI of T spine and breif (sic) response to steroid shot, she is not a candidate for further shots and no surgery is indicated. Weight loss and PT is the treatment she needs and core strengthening. We discussed pain control in detail and have decided to put her back on hydrocodone.

(AR at p. 1060).

On January 5, 2012, Michael J. Sikora, M.D., Plaintiff's previous PCP, wrote that the MRI showed "some arthritis in mid back and some herniated discs without nerve impingement" and requested that an "esi," presumably an epidural steroid injection, be arranged for the Plaintiff. (AR at p. 1151).

In July 2012, Plaintiff told Dr. Dooley during a visit that she wished something could be done about her chronic back pain. (AR at p. 1046). In September 2012, Dr. Dooley noted that Plaintiff had "chronic thoracic back pain on COT," but "still has back pain despite this and tries to walk." Dr. Dooley observed that there was no injury to Plaintiff's neck and no neurological symptoms in her arms. Plaintiff requested a form be completed for her "disability of back pain" in order to get a pass for reduced fares with Spokane Transit Authority. (AR at p. 1036).

On December 5, 2012, Dr. Dooley completed a form in connection with

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

Plaintiff's application "for a discharge of a federal student loan and/or teaching service obligation for a federal grant on the basis that he or she has a total and permanent disability." The form indicated that to qualify for a discharge, the applicant must be able to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death, has lasted for a continuous period of not less than 60 months, or can be expected to last for continuous period of not less than 60 months. The form noted that this disability standard might be different from standards used under other programs and that a determination by another federal agency, for example, the Social Security Administration (SSA), that the applicant is disabled, would not establish the applicant's eligibility for this loan discharge. (AR at p. 711).

Dr. Dooley indicated that Plaintiff met the standard for the discharge. He stated Plaintiff's disabling condition was "[b]ack pain- mid back long term due to degenerative/arthritis and disc herniation." He indicated the condition was "severe" and that Plaintiff "cannot walk or stand for even short periods of time- 15 minutes at most," and that her lifting was "very limited" and she had "difficulty doing chores or lifting more than 10 pounds." The doctor also indicated that Plaintiff had "pain on bending," that she needed to "change positions," and her residual functional capacity was "poor." (AR at p. 711).

Plaintiff saw Dr. Dooley once again on March 6, 2013. At that time, Plaintiff informed the doctor that "her back pain is not helped by pain medications much at all and wonders if anything else can be done." The doctor noted that "[t]his pain is well documented and she is on a COT plan." (AR at p. 1020).

On June 5, 2013, after the May 30, 2013 administrative hearing, but before the ALJ's decision finding Plaintiff not disabled, Dr. Dooley completed a "Medical Source Statement Of Ability To Do Work-Related Activities," a form from the Social Security Administration Office Of Disability Adjudication And Review (ODAR). Dr.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

Dooley stated Plaintiff could "occasionally," up to 1/3 of an eight hour workday, lift and carry up to 10 pounds. (AR at p. 833). Asked to identify the medical and clinical findings supporting this assessment, Dr. Dooley wrote:

> Thoracic back pain, DJD/DDD Thoracic spine by MRI study- Exacerbation with use of legs and arms regarding lifting, carrying except very light items and not repetitively.

(AR at p. 833).

Dr. Dooley further indicated that Plaintiff could sit less than 10 minutes without interruption; stand less than 10 minutes without interruption; and walk less than 10 minutes without interruption. In an eight hour workday, he opined that Plaintiff could sit for a total of one hour; stand for a total of one hour; and walk for a total of one hour. When she was not sitting, standing or walking, she would be "laying down in bed or reclining in a chair," according to Dr. Dooley. (AR at p. 834). Asked to identify the medical and clinical findings supporting this assessment, Dr. Dooley wrote:

> Thoracic pain in back due to DJD/DDD with inability to stay in one position for any significant length of time. She can not walk for any significant distance due to it exacerbating her pain.

(AR at p. 834).

As to use of her hands, Dr. Dooley indicated Plaintiff could never reach (overhead or otherwise) or push/pull, while she could "occasionally" handle, finger and feel. He indicated that Plaintiff's pain was "exacerbated by use of upper extremities in above activities." (AR at p. 835).

Dr. Dooley indicated Plaintiff could never climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl. According to the doctor, these "posture changes put stress on thoracic spine[,] exacerbating pain." (AR at p. 836).

Lastly, Dr. Dooley indicated that the limitations opined by him had lasted or

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

would last 12 consecutive months. (AR at p. 838).

In her decision, the ALJ did not specifically refer to Dr. Dooley's June 2013 assessment, but she did address his December 2012 assessment as follows:

> A functional capacity assessment in December 2012 indicated that the claimant could not walk or stand for even short periods of time, 15 minutes at most, and required the accommodation to change positions as needed. Lifting was also limited to 10 pounds. [Citation omitted]. Such a residual functional capacity is defined as sedentary. In light of all normal and unremarkable musculoskeletal and cardiovascular testing, the undersigned does not find this capacity supported or persuasive.

(AR at p. 24).

The ALJ cited to the testimony of Dr. Morse at the hearing. According to the ALJ:

> Dr. Morse . . . pointed out that according to the evidence, the claimant had not been medically seen since January 2012, which the claimant confirmed. He also testified that based on his review of the claimant's record, the claimant had no neurological deficits and no evidence of any cardiovascular conditions. He further testified that image findings have actually been mild including indications of protrusion and encroachment, and did not correspond to her complaint level. Her complaints of musculoskeletal pain had also discontinued. . . . Dr. Morse concurred with the State agency medical consultants' assessment that the claimant maintained a light level residual functional capacity.

(AR at p. 25).

The ALJ also wrote that because "the claimant's treatment records do not support the frequency and severity of symptoms currently being asserted by the claimant, **and no doctor has disabled her**" that she (the ALJ) gave "more weight to the assessments/opinions of the medical experts at the hearing, who have had the benefit of the entire record, and who have taken into account and adequately accommodated for the severity of the claimant's impairments." (AR at p. 26)(emphasis added).

It is not at all clear what the ALJ meant by the Plaintiff having "not been medically seen since January 2012," considering that Plaintiff was first seen by Dr.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

Dooley in April 2012. All the court can find from Dr. Morse's May 30, 2013 testimony is that he stated that x-rays taken in March 2010 showed mild degenerative disease "[a]nd then, there aren't any objective medical tests with respect to the back until the MRI that was done on January 5th, 2012." (AR at p. 63). It also bears noting that Dr. Morse's specialty is cardiology, not orthopedics. (AR at pp. 203-11). The opinions of the non-examining state agency medical consultants, with which Dr. Morse concurred, were rendered in February 2012 (AR at pp. 133-140), over two years before Dr. Dooley's opinion, and the consultant who completed the physical RFC (Elizabeth St. Louis, M.D.) noted that at that time, there was "no indication that there is medical or other opinion evidence." (AR at p. 138).

During cross-examination, Plaintiff's counsel asked Dr. Morse about Dr. Dooley's December 5, 2012 opinion. Dr. Morse indicated he was not there to comment on a treating doctor's opinion, but to "identify the [objective] medically determinable impairments and give an RFC based on my own review, not on the opinion, specifically, of the treating doctor." (AR at pp. 59-60). He added that:

> There is not, in this chart, an orthopedic consultation, which would have been very helpful especially for non-orthopedic reviewers, to do an objective examination and tell us whether there is a specific neurological deficit or not. A lot of the inability to walk or stand may be due to issues with pain. And pain is a symptom; it's not an objective finding.

(AR at p. 60). In the end, Dr. Morse opined that he had "no major disagreement" with the limitations opined by the state agency medical consultants (AR at pp. 65-66) which, as noted, were rendered over two full years before Plaintiff first saw Dr. Dooley, and nearly three years before Dr. Dooley offered an opinion in December 2012 about Plaintiff's functional limitations.

Finally, contrary to the ALJ's assertion that no doctor had "disabled" Plaintiff, it is clear that Dr. Dooley "disabled" the Plaintiff in December 2012 and did so again in June 2013. It is noted that in her decision, the ALJ did not discuss Dr. Dooley's June 2013 assessment even though it was part of the record before her. (AR at p. 33,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

"List Of Exhibits"). And obviously, Dr. Dooley's June 2013 assessment could not have been considered by Dr. Morse whose testimony took place in May 2013.

For the reasons set forth above, the ALJ did not provide "specific and legitimate" reasons based on substantial evidence in the record for discounting the opinions of Dr. Dooley, the Plaintiff's treating provider.

**CREDIBILITY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014).

The ALJ discounted Plaintiff's credibility and it appears she did so primarily because she concluded the medical record did not support the limitations claimed by Plaintiff ("normal and unremarkable musculoskeletal and cardiovascular testing;" "claimant's treatment records do not support the frequency and severity of symptoms currently being asserted by [her]"). (AR at pp. 23-26). It follows then that because the ALJ did not provide "specific and legitimate" reasons to discount the opinions of Plaintiff's treating physician, Dr. Dooley, she likewise did not provide clear and convincing reasons to discount Plaintiff's testimony regarding her limitations.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id*., citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

Here, the three elements for an award of immediate benefits are satisfied. The ALJ failed to provide legally sufficient reasons for rejecting evidence (medical opinion and claimant testimony); no outstanding issues remain to be resolved before a determination of disability can be made; further administrative proceedings would not be useful; and the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceedings.

In her decision, the ALJ commented on Dr. Dooley's December 2012 assessment as follows:

> A functional capacity assessment in December 2012 indicated that the claimant could not walk or stand for even short periods of time, 15 minutes at most, and required the accommodation to change positions as needed. Lifting was also limited to 10 pounds. [Citation omitted]. Such a residual functional capacity is defined as sedentary.

(AR at p. 24). At the hearing, Plaintiff's counsel presented a hypothetical question to the VE based on those very limitations. The VE responded that the Plaintiff would then be limited to sedentary level jobs and proceeded to identify such jobs existing in the national economy. (AR at pp. 88-89). The ALJ noted this testimony in her decision "[e]ven accepting the sedentary level residual functional capacity outlined" in Dr. Dooley's December 2012 assessment. (AR at p. 27).

Plaintiff's counsel went on to ask the VE another hypothetical based on at least some of the limitations contained in Dr. Dooley's June 2013 assessment (individual can only sit for about five to ten minutes at a time, would have to sit/stand frequently throughout the day, and has difficulty sleeping at night and is often fatigued and may take about a two to three hour nap during the course of the day). The VE testified that if the nap had to be taken during the workday, all jobs would be precluded. (AR at pp. 89-90). While Dr. Dooley did not say anything specific in his June 2013 assessment about Plaintiff having difficulty sleeping at night and needing to take a two to three hour nap during the day, he did indicate that Plaintiff could sit for a total of one hour in an eight hour workday, could stand for a total of one hour in an eight

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

hour workday, could walk for one hour in an eight hour workday, and then the remaining five hours would need to lie down in bed or recline in a chair. (AR at p. 834). Accordingly, for all intents and purposes, the VE's testimony confirms what is apparent from Dr. Dooley's June 5, 2013 assessment: Plaintiff cannot complete an eight hour workday and therefore, is incapable of engaging in substantial gainful activity.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 19) is **DENIED**. The Commissioner's decision is **REVERSED**. Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for an immediate award of disability benefits based on a disability onset date of June 5, 2013. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this 28th day of December, 2016.

*s/Lonny R. Suko*

———————————————
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**